IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:18-CV-32-FL

| TAMARA R. MURRILL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHOICE HOTELS INTERNATIONAL, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 21). Plaintiff responded in opposition and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff, who formerly worked at an EconoLodge hotel located in Elizabeth City, North Carolina (the "EconoLodge" or the "hotel"), commenced this action against defendant, allegedly a franchisor of the EconoLodge, asserting claims of negligence arising from an assault upon plaintiff by a hotel guest. In amended complaint filed July 17, 2018, plaintiff asserts claims of negligence due to failure to provide a safe and secure premises and work environment, and failure to provide proper training. Plaintiff seeks award of compensatory and punitive damages, as well as costs upon jury trial.

Defendant filed the instant motion to dismiss on October 16, 2018, seeking dismissal of all claims with prejudice.

## STATEMENT OF THE FACTS

The facts alleged in the complaint[1] may be summarized as follows. Plaintiff began working at the EconoLodge at the end of 2015, when she was 17 years of age. Defendant, a Delaware corporation with principal office in Maryland, was at all times relevant herein a franchisor of the EconoLodge.

Plaintiff was employed to run the front desk and perform other menial tasks at the hotel. At the time of her employment plaintiff was a senior in high school, with limited work experience. Plaintiff applied for the position by calling the hotel and asking if they had any open positions. Plaintiff "believed she was being employed by 'EconoLodge,' a national hotel chain, which is owned and controlled by" defendant. (Compl. ¶ 7).

Upon employment, plaintiff received minimal training, including training to use a software system for payment and reservations, which was controlled, owned, and created by defendant. Defendant also provides software for further training to employees of the EconoLodge regarding day-to-day employment activities. Plaintiff was tasked with working a 4 p.m. to 11 p.m. shift, and she primarily worked her shift alone, without any other staff, including security officers, present at the hotel property.

Plaintiff was informed during her training that upon complaint of any guest or request for service that in the course of her duties plaintiff was to attempt to fulfill said request. Her manager

---

[1] Hereinafter, unless otherwise specified, all references to the "complaint" or "Compl." are to the amended complaint (DE 3).

directed her that this included going to a guest's room unaccompanied. Defendant's training policies did not prohibit this conduct.

Plaintiff received minimal training regarding entering guest rooms and what if any precautions should be taken. She was not specifically trained to decline to enter a room where the door was open and a guest did not appear to be present. In the past five years leading up to the assault on plaintiff, there were at least 200 reported crimes, including 30 assaults (sexual or otherwise), 22 drug related incidents, and at least 13 occurrences where employees of this EconoLodge in Elizabeth City were themselves harassed or assaulted while on the job.

During the days leading up to the assault on plaintiff, fellow employees had referenced odd behavior from a guest of the hotel, Aeron Nicholas Etheridge ("Etheridge"). This was documented in a log maintained by employees. Etheridge had been staying at the hotel off and on since his release from jail in November of 2015.

On the evening of the assault on plaintiff, January 11, 2016, plaintiff was working the front desk with no other staff present. Etheridge contacted plaintiff at the front desk on two occasions that evening, the first regarding an issue with the television and the second with a request for towels and soap. As required by her training, plaintiff went to Etheridge's room in each instance. The second time she approached the room the door was open and Etheridge did not upon inspection appear to be in the room.

Upon entering Etheridge's room to deliver the items, Etheridge, who had been hiding, assaulted plaintiff by attacking her, tying her up, and raping her, over the course of approximately one hour, until he released her. At no time during the assault did an employee or other staff member know the whereabouts of plaintiff as she was working alone without any security presence. Plaintiff

suffered severe and lasting physical and mental injuries. She has not returned to work since the assault.

**COURT'S DISCUSSION**

A.	Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.	Analysis

To state a claim for negligence against defendant, as plaintiff asserts in her complaint, plaintiff must allege facts establishing that defendant "failed to exercise proper care in the performance of some legal duty owed [to plaintiff] and that the breach of this duty was the proximate cause of [plaintiff's] injury." Goodman v. Wenco Foods, Inc., 333 N.C. 1, 18 (1992).

Plaintiff asserts two theories in the complaint under which defendant allegedly owed a duty to plaintiff: 1) an actual or apparent agency theory, based upon defendant's role as a franchisor for EconoLodge, and 2) a theory of an independent duty owed by defendant by taking responsibility for a safe working environment. The court addresses each in turn below.

4

1.  Agency liability

Plaintiff asserts that defendant is liable for plaintiff's injuries by virtue of its role as a franchisor of EconoLodge, under a theory of actual or apparent agency. (See Compl. ¶¶ 25-26, 34-35). Although plaintiff does not provide any briefing in support of this theory of liability in opposition to motion to dismiss, (see Opp. (DE 23) at 3), analysis thereof is important to understanding the posture of plaintiff's claims.

Under North Carolina law, as a general rule, "[w]hoever commits a wrong is liable for it, and it is immaterial whether it be done by him in person or by another acting by his authority, express or implied." Jackson v. Am. Tel. & Tel. Co., 139 N.C. 347, 353 (1905). Accordingly, "the principal is liable for the tort of his agent, and the master for the tort of his servant." Id. "If the wrongful act is done by express command of the master, or even if he has afterwards made it his own by adoption, there is no difficulty in applying the rule; but it is otherwise when the liability must proceed only from an implied authority." Id. "Where the servant does a wrong to a third person, the rule of respondeat superior applies, and the master must answer for the tort, if it was committed in the course and scope of the servant's employment and in furtherance of the master's business. Id.

In this manner, through a theory of apparent agency, a franchisor may be held liable for negligent acts of a franchisee. The United States Court of Appeals for the Fourth Circuit, applying North Carolina law, has noted that "[t]hough no actual agency exists, a party may be held to be the agent of another on the basis that he has been held out by the other to be so in a way that reasonably induces reliance on the appearances." Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 166 (4th Cir. 1988). Applying this rule in the context of a hotel franchise, the Fourth Circuit determined that "[b]y virtue of [its] franchise agreement, Holiday Inns retained a significant degree of control over

5

the operation of the Holiday Inn-Concord," which was sufficient to impose liability upon the franchisor for the negligence of the franchisee in failing to protect a guest of the hotel from an assault by a third party entering upon the property. Id.

In this case, however, liability based upon actual or apparent agency is precluded because the alleged franchisee here, EconoLodge, plaintiff's purported employer, (see Compl. ¶¶ 3, 4, 6, 7), is itself excluded from liability in negligence under the North Carolina Workers' Compensation Act. "The North Carolina Workers Compensation Act was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence." Hamby v. Profile Prod., L.L.C., 361 N.C. 630, 635 (2007) (quotations omitted). "In exchange for these limited but assured benefits, the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act." Id. (quotations omitted); see N.C. Gen. Stat. § 97-9.

Where plaintiff lacks a claim of negligence against her employer, the alleged agent and franchisee, she cannot impute a negligence claim onto defendant based upon an agency theory of liability. See Taylor v. Denton Hatchery, Inc., 251 N.C. 689, 691 (1960) ("[W]here plaintiff in an action against an [agent] is defeated on the merits, the judgment is generally regarded as a bar to a subsequent action against the [master], and vice versa, at least when the master is not guilty of any independent or concurrent wrong, but must be held, if at all, under the doctrine of respondeat superior."); Cameron Hosp., Inc. v. Cline Design Assocs., PA, 223 N.C. App. 223, 226 (2012) (holding that "where the agent has no liability, there is nothing from which to derive the principal's liability under the doctrine" of respondeat superior).

6

In sum, plaintiff's claims premised upon agency theory of liability must be dismissed, because negligence claims against the alleged agent, EconoLodge, are precluded by the North Carolina Workers' Compensation Act. Dismissal is with prejudice because the claims on this theory are barred as a matter of law and no set of facts can be pleaded to provide relief under this agency theory of recovery.

2. Direct liability

Plaintiff asserts in her complaint and in her brief in opposition to dismissal that defendant is directly liable to plaintiff because it undertook and accepted responsibility to provide a safe working environment for plaintiff.

Like her claim based upon agency, plaintiff's direct liability claim is cabined by the exclusion in the Workers' Compensation Act, as interpreted by the North Carolina Supreme Court. "By its plain language, N.C. [Gen. Stat.] § 97-9 extends exclusivity protection beyond the employer to 'those conducting the employer's business.'" Hamby, 361 N.C. at 635 (quoting N.C. Gen. Stat. § 97-9). "[T]his phrase should be liberally construed and . . . 'one must be deemed to be conducting his employer's business, within the meaning of this statute, whenever he, himself, is acting within the course of his employment, as that term is used in the Workmen's Compensation Act.'" Id. (quoting Altman v. Sanders, 267 N.C. 158, 161 (1966)). "It is not necessary, in order to bring an employee within the protection of this statute, to show that his act was such as would have been imputed to the employer at common law." Altman, 267 N.C. at 161.

"The decisive question then," is whether defendant "was conducting the business of" the employer, Hamby, 361 N.C. at 635, where, as plaintiff asserts, it undertook and accepted responsibility to provide a safe working environment for plaintiff. As so asserted, defendant's

7

"management of this part of [EconoLodge's] business is no different from its handling of other aspects of [EconoLodge's] business." Hamby, 361 N.C. at 638. "Indeed, maintenance of a safe workplace is a duty of every employer." Id. (citing N.C. Gen. Stat. § 95-129(1) - (2)). As such, where plaintiff has asserted that defendant was engaged in "conducting [EconoLodge's] business," the exclusivity provisions of the North Carolina Workers' Compensation Act bar plaintiff's negligence claims, on a direct liability theory, as a matter of law. Id. at 635.

Plaintiff nonetheless seeks to overcome the Workers' Compensation Act bar by contending that she has not alleged the type of control by defendant's EconoLodge business to qualify as conducting its business, but she has alleged enough of an undertaking regarding workplace safety to establish independent liability. In support of this theory, plaintiff cites to North Carolina Court of Appeals authority recognizing an independent basis for liability for a parent corporation where it "affirmatively undertak[es] to provide a safe working environment at [a] subsidiary" facility. Edwards v. GE Lighting Sys., Inc., 200 N.C. App. 754, 759 (2009); Spaulding v. Honeywell Int'l, Inc., 184 N.C. App. 317, 323 (2007) (recognizing same rule). According to the North Carolina Court of Appeals, "[t]here is nothing in Hamby that could be read to create per se immunity for a parent corporation under the Workers' Compensation Act" if a parent corporation meets the test for this theory of liability. Edwards, 200 N.C. App. at 758.

Under this cited theory, "also known as the 'Good Samaritan' doctrine," "one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking." Id. "The threshold question in a Good Samaritan claim is whether [defendant] undertook affirmative steps to ensure the safety of [another

8

entity's] employees, creating an independent duty of care" to that entity's employees. Id. at 758-759. The North Carolina Court of Appeals does "not lightly assume that a [third party] has agreed to accept this responsibility." Id. at 759. "Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a [separate] corporation." Id. "To establish such a duty, the [plaintiff] employee must show some proof of a positive undertaking by the [separate] corporation." Id.

As a threshold matter, plaintiff's negligence claims based upon this theory of liability are not well supported in the law, where plaintiff does not cite to any North Carolina case holding that a plaintiff successfully demonstrated such "positive undertaking" and "affirmative steps to ensure the safety of [another entity's] employees," id. at 758-759, while not at the same time demonstrating that the defendant was engaged in "conducting [the] business" of such entity. Hamby, 361 N.C. at 635. In light of the North Carolina Supreme Court's "liberal[] constru[ction]" of the worker's compensation bar, id., particularly in the context of workplace safety management, see id. at 683, the court doubts that it is possible to sufficiently allege workplace safety conduct by a franchisor establishing liability under the "Good Samaritan" doctrine, Edwards, 200 N.C. App. at 759, while at the same time escaping the employer bar of the Workers' Compensation Act.

Although the Fourth Circuit has not addressed this issue in a published opinion, it has observed the practical consequences of a workers' compensation bar on negligence claims, noting "[f]rom the point of view of the lawyers representing . . . plaintiffs, it [is] necessary to attempt to hew a very thin and at times virtually imperceptible line" between alleging an independent tort and alleging conduct falling under the Workers' Compensation Act bar. McClelland v. Goodyear Tire & Rubber Co., No. 90-3087, 1991 WL 38700 *2 (4th Cir. Mar. 25, 1991). "[W]hile it [it] incumbent

9

on the plaintiffs to establish [defendant's] responsibility in tort by showing that enough tort creating activity was under [defendant's] control, that result [will] have to be achieved without, at the same time, establishing such domination on [defendant's] part as to render it a statutory employer and thus entitled to immunity under the workers' compensation law." Id. The same can be said in the present circumstances.

In any event, to the extent Hamby leaves open the possibility of a negligence claim against a franchisor based upon a "Good Samaritan" theory, plaintiff does not allege such "positive undertaking" and "affirmative steps to ensure the safety of [EconoLodge's] employees," to state such a claim. Edwards, 200 N.C. App. at 758-759. Critically, plaintiff alleges defendant had "<u>the right to</u> inspect and enforce [its] policies through periodic inspections and training," and "<u>the ability to</u> take punitive action against [EconoLodge] for failing to adhere to the franchisor's policies," (Compl. ¶¶ 29, 39) (emphasis added), but plaintiff does not allege any positive undertaking and affirmative steps to impose particular safety requirements upon EconoLodge. With respect to other alleged conduct by defendant, plaintiff alleges that she "was trained" to use defendant's "software system for payment and reservations," and "day-to-day employment activities," (Compl. ¶ 10), and plaintiff points to defendant's adversting and "online training materials," (id. ¶¶ 30, 40), but plaintiff does not allege these systems governed workplace safety.

Comparison to Edwards is instructive. In particular, in Edwards, the court declined to impose liability where the defendant parent company "provided safety goals and objectives to [its subsidiary] along with tools to help [the subsidiary] implement safety programs." 200 N.C. App. at 760. The court determined such activities were insufficient to establish "Good Samaritan" liability "even if [safety] concerns were entered into [an] audit tracking program by [the

10

defendant's] personnel." Id. It was likewise not enough that "biannual verification audits conducted by [the defendant's] personnel were intended to ensure that [the subsidiary employer] was utilizing [the defendant's software] correctly and effectively in light of [the defendant's] goals and objectives," where "[t]hese audits were a general review and were not intended to be extensive safety audits of the entire [subsidiary] plant." Id. All these facts were insufficient to establish "Good Samaritan" liability because there were "no allegations of any specific undertaking by [the defendant] that [it] . . . went beyond concern or minimal contact about safety matters and assumed the primary responsibility for workplace safety at [the subsidiary plant]." Id. at 761. The same can be said here. Plaintiff has not alleged any specific undertaking by defendant to assume primary responsibility for workplace safety at the EconoLodge.

Other examples cited in Edwards are equally applicable to the circumstances alleged here. The court cited, for instance, a case where "Good Samaritan" liability was rejected "where the parent corporation provided general safety guidelines to be implemented by local management, which . . . amounted to only a mere concern with safety matters." Id. at 759-60 (emphasis added). Equally insufficient are "allegations that the parent company was concerned about safety at the subsidiary and that the parent company promulgated safety procedures that the subsidiary was supposed to implement." Id. at 760 (emphasis added) (emphasis added). Such emphasized insufficient allegations are similar to what plaintiff relies upon here. Likewise, where "minimal contact about safety matters" is not sufficient to create liability, id. at 759, then no actual contact alleged here about safety matters must also be insufficient to state a claim.

At bottom, plaintiff's direct liability claim as presently asserted based upon defendant's responsibility for providing a safe working environment for plaintiff is barred by the exclusion in

11

the Workers' Compensation Act. Where plaintiff also seeks to advance her negligence claims based upon a "Good Samaritan" theory of liability outside of the exclusion in the Workers' Compensation Act, such a claim is not well supported in the law, and plaintiff in any event has not alleged facts supporting such a claim. Because such claims in part are subject to dismissal for failure to plead sufficient facts, dismissal in that part is without prejudice. Plaintiff's third "claim" for "punitive damages," (Compl. p. 9), which is derivative of her negligence claims, also is dismissed without prejudice.

For that part of plaintiff's claims dismissed without prejudice, the court allows plaintiff an opportunity to seek leave to amend. See Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 623 & 629 (4th Cir. 2015); see, e.g., Hancock v. Americo Fin. Life & Annuity Ins. Co., 723 F. App'x 241, 242 (4th Cir. 2018) (dismissing appeal and remanding case for amendment of complaint). Plaintiff is allowed 21 days from the date of this order to file a motion for leave to amend complaint, accompanied by a proposed amended complaint and redline thereof showing changes proposed to be made. In the event plaintiff does not seek leave to amend in this manner in the time period specified, the clerk without further order of this court shall enter judgment closing the case based upon this order.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss (DE 21). Plaintiff's claims are dismissed in part with prejudice and in part without prejudice, as set forth herein. Plaintiff is allowed **21 days** from the date of this order to file a motion for leave to amend complaint, in accordance with the requirements set forth herein. In the event plaintiff does not seek

leave to amend in this manner in the time period specified, the clerk without further order of this court shall enter judgment closing the case based upon this order.

SO ORDERED, this the 17th day of April, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge