IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:18-CV-32-FL

| | | |
|---|---|---|
| TAMARA R. MURRILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHOICE HOTELS INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 32). Plaintiff responded in opposition and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted.

**STATEMENT OF THE CASE**

Plaintiff, who formerly worked at an EconoLodge hotel located in Elizabeth City, North Carolina (the "EconoLodge" or the "hotel"), commenced this action against defendant, allegedly a franchisor of the EconoLodge, asserting claims of negligence arising from an assault upon plaintiff by a hotel guest. On April 17, 2019, the court dismissed plaintiff's claims in part with prejudice and in part without prejudice, allowing plaintiff an opportunity to file a motion for leave to amend. See Murrill v. Choice Hotels Int'l, Inc., 383 F. Supp. 3d 594, 603 (E.D.N.C. 2019). Upon plaintiff's unopposed motion, the court allowed plaintiff to file an amended complaint.

On June 6, 2019, plaintiff filed the operative amended complaint (hereinafter, the "amended complaint"). Defendant filed the instant motion to dismiss on June 25, 2019, arguing that plaintiff's claims fail as a matter of law, and in the alternative that dismissal is warranted because plaintiff did not file her amended complaint in the time allowed by the court. Plaintiff responded in opposition on July 5, 2019, and defendant replied on July 11, 2019.

### STATEMENT OF THE FACTS

The facts alleged in the amended complaint may be summarized as follows. Plaintiff began working at the EconoLodge at the end of 2015, when she was 17 years of age. Defendant, a Delaware corporation with principal office in Maryland, was at all times relevant herein a franchisor of the EconoLodge.

Plaintiff was employed to run the front desk and perform other menial tasks at the hotel. At the time of her employment plaintiff was a senior in high school, with limited work experience. Plaintiff applied for the position by calling the hotel and asking if they had any open positions. Plaintiff "believed she was being employed by 'EconoLodge,' a national hotel chain, which is owned and controlled by" defendant. (Am. Compl. ¶ 8).

Upon employment, plaintiff received minimal training, including training to use a software system for payment and reservations, which was controlled, owned, and created by defendant. Defendant also provides software for further training to employees of the EconoLodge regarding day-to-day employment activities. "[S]aid software is known as 'Choice University' and is a program designed and implemented by [defendant] and required to be used by the franchisee." (Id. ¶ 11). According to the amended complaint, defendant undertook the following actions with respect to training and oversight of the EconoLodge:

> Defendant requires of each of its franchisees to enter into a franchise agreement which requires the following affirmative actions on the part of both parties as it pertains to regulations and rules:

> i.  [the franchisee shall] comply with the requirements of the agreement and the rules and regulations [provided by Defendant]
>
> ii.  The right of the Defendant to periodically inspect the franchisee property and procedures and advise on changes the hotel '**must**' make to comply with the rules and regulations
>
> iii.  Define rules and regulations as current rules and regulations applying to all hotels created by the Defendant and including operating and maintaining the hotel.
>
> iv.  Requires mandatory training for General Manager.
>
> v.  Requires on site hotel training and review upon initial licensing
>
> vi.  Conducts mandatory and voluntary training programs, as well as regularly scheduled training seminars, and interactive computer and mobile based training system to train hotel employees.
>
> vii.  The Defendant reserves the right to terminate said licensing agreement for failure to comply with these rules and regulations.
>
> . . . The Defendant notes in agreement that it will provide 'scheduled' inspections during the year, which upon information and belief would detail that said inspections 'had' occurred in the year leading up to the assault on the Plaintiff. . . .

(Id. ¶¶ 12-13 (internal quotations, emphasis, punctuation, and brackets as in original)).

Plaintiff was tasked with working a 4 p.m. to 11 p.m. shift, and she primarily worked her shift alone, without any other staff, including security officers, present at the hotel property. "During the course of [plaintiff's] minimal training, she was informed that upon complaint of any tenant or request for service that [plaintiff] in the course of her duties was to attempt to fulfill said request included going to the guest's room unaccompanied, a directive given to her by her manager, and not prohibited in training policies of [defendant]." (Id. ¶ 16). "Plaintiff was not taught what if any precautions to take upon entering an empty room, and was specifically told to enter [a] room where the door was open and a guest did not appear to be present." (Id. ¶ 17).

In the past five years leading up to the assault on plaintiff, there were at least 200 reported crimes, including 30 assaults (sexual or otherwise), 22 drug-related incidents, and at least 13

occurrences where employees of this EconoLodge in Elizabeth City were themselves harassed or assaulted while on the job.

During the days leading up to the assault on plaintiff, fellow employees had referenced odd behavior from a guest of the hotel, Aeron Nicholas Etheridge ("Etheridge"). This was documented in a log maintained by employees. Etheridge had been staying at the hotel off and on since his release from jail in November 2015.

On the evening of the assault on plaintiff, January 11, 2016, plaintiff was working the front desk with no other staff present. Etheridge contacted plaintiff at the front desk on two occasions that evening, the first regarding an issue with the television and the second with a request for towels and soap. As required by her training, plaintiff went to Etheridge's room in each instance. The second time she approached the room the door was open and Etheridge did not upon inspection appear to be in the room.

Upon entering Etheridge's room to deliver the items, Etheridge, who had been hiding, attacked plaintiff, tied her up, and sexually assaulted and raped her, over the course of approximately one hour, until he released her. At no time during the sexual assault and rape did an employee or other staff member know the whereabouts of plaintiff as she was working alone without any security presence. Plaintiff suffered severe and lasting physical and mental injuries. She has not returned to work since the assault.

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.    Analysis

To state a claim for negligence against defendant, as plaintiff asserts in her complaint, plaintiff must allege facts establishing that defendant "failed to exercise proper care in the performance of some legal duty owed [to plaintiff] and that the breach of this duty was the proximate cause of [plaintiff's] injury." Goodman v. Wenco Foods, Inc., 333 N.C. 1, 18 (1992).

Plaintiff asserts two theories in the amended complaint under which defendant allegedly owed a duty to plaintiff: 1) an actual or apparent agency theory, based upon defendant's role as a franchisor for EconoLodge, and 2) a "Good Samaritan" theory of an independent duty owed by defendant by taking responsibility for a safe working environment. (Am. Compl. ¶ 39). In its prior order, the court already addressed and dismissed with prejudice plaintiff's claim premised upon an actual or apparent agency theory. See Murrill, 383 F. Supp. 3d at 598-600. Plaintiff's amended complaint makes no changes to the assertions upon which this claim is based, and additional allegations in the amended complaint do not provide cause for the court to reconsider its dismissal of this claim. Accordingly, the court adheres to its prior dismissal with prejudice of plaintiff's claim based upon an actual or apparent agency theory. The court turns, thus, to plaintiff's claim based upon a "Good Samaritan" theory of relief, which the court dismissed without prejudice in its prior order, see id. at 600-603, and which plaintiff now reasserts based upon additional allegations in the amended complaint.

In support of this "Good Samaritan" theory, plaintiff cites to North Carolina Court of Appeals authority recognizing an independent basis for liability for a parent corporation where it "affirmatively undertak[es] to provide a safe working environment at [a] subsidiary" facility. <u>Edwards v. GE Lighting Sys., Inc.</u>, 200 N.C. App. 754, 759 (2009); <u>Spaulding v. Honeywell Int'l, Inc.</u>, 184 N.C. App. 317, 323 (2007) (recognizing same rule). As a threshold matter, plaintiff does not cite, and this court has not located, any North Carolina Supreme Court case applying this theory of liability against a franchisor for injury to an employee of a franchisee, nor against a parent for injury to a subsidiary. Cf. <u>Pinnix v. Toomey</u>, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955) (recognizing that the common law "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others" in suit by construction general contractor against subcontractor).

Nevertheless, plaintiff urges a claim of negligence on this theory on the basis of the principles enunciated by the North Carolina Court of Appeals. "The threshold question in a Good Samaritan claim is whether [a defendant] undertook affirmative steps to ensure the safety of [another entity's] employees, creating an independent duty of care" to that entity's employees. <u>Edwards</u>, 200 N.C. App. at 758-759. The North Carolina Court of Appeals has emphasized: "Because <u>an employer</u> has a nondelegable duty to provide safe working conditions for its employees, <u>we do not lightly assume that a [third party] has agreed to accept this responsibility</u>." Id. at 759 (emphasis in original; quotations omitted). "Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a [separate] corporation." <u>Id.</u> "To establish such a duty, the [plaintiff] employee must show some proof of a positive undertaking by the [separate] corporation." <u>Id.</u> There must be allegations of a "specific undertaking by [the defendant] that . . . [it] went beyond concern or minimal contact

about safety matters and assumed the primary responsibility for workplace safety at [the premises]." Id. at 761 (emphasis added).

Plaintiff does not allege that defendant took "affirmative steps to ensure the safety of [EconoLodge's] employees," required to state such a claim. Id. at 758. Critically, plaintiff alleges she "was trained" to use defendant's "software system for payment and reservations," and "day-to-day employment activities," (Am. Compl. ¶ 11), but plaintiff does not allege these systems were imposed specifically to ensure the safety of EconoLodge's employees. In her amended complaint, plaintiff describes several aspects of a franchise agreement, requiring franchisees to comply with rules and regulations of the franchisor, including the right to "periodically inspect the franchisee property" and rues for "operating and maintaining the hotel." (See id. ¶ 12). However, none of the cited rules and regulations mentions "safety," much less anything about the franchisor undertaking the responsibility of ensuring the safety of the franchisee's employees, which, as noted by Edwards is the nondelegable duty of the employer, the franchisee. Edwards, 200 N.C. App. at 759 (quotations omitted). Even if it can be inferred reasonably that franchise agreement rules and regulations contribute to the safety of franchisee employees, this does not rise above the level of "concern or minimal contact about safety matters," which is insufficient to establish "Good Samaritan" liability under Edwards. Id. at 761.

Comparison to Edwards again is instructive. In particular, in Edwards, the court declined to impose liability where the defendant parent company "provided safety goals and objectives to [its subsidiary] along with tools to help [the subsidiary] implement safety programs." 200 N.C. App. at 760. The court determined such activities were insufficient to establish "Good Samaritan" liability "even if [safety] concerns were entered into [an] audit tracking program by [the defendant's] personnel." Id. It was likewise not enough that "biannual verification audits conducted by [the defendant's] personnel were intended to ensure that [the subsidiary employer]

7

was utilizing [the defendant's software] correctly and effectively in light of [the defendant's] goals and objectives," where "[t]hese audits were a general review and were not intended to be extensive safety audits of the entire [subsidiary] plant." Id. All these facts were insufficient to establish "Good Samaritan" liability because there were "no allegations of any specific undertaking by [the defendant] that [it] . . . went beyond concern or minimal contact about safety matters and assumed the <u>primary responsibility</u> for workplace safety at [the subsidiary plant]." Id. at 761 (emphasis added). The same can be said here. Plaintiff has not alleged any specific undertaking by defendant to assume <u>primary responsibility</u> for workplace safety of EconoLodge's employees at the EconoLodge.

Other examples cited in <u>Edwards</u> are equally applicable to the circumstances alleged here. The court cited, for instance, a case where "Good Samaritan" liability was rejected "where the parent corporation provided <u>general safety guidelines to be implemented by local management</u>, which . . . amounted to only a mere concern with safety matters." Id. at 759-60 (emphasis added) (citing <u>Muniz v. Nat'l Can Corp.</u>, 737 F.2d 145, 149 (1st Cir. 1984)). Equally insufficient are "allegations that the parent company was concerned about safety at the subsidiary and that the parent company <u>promulgated safety procedures that the subsidiary was supposed to implement</u>." Id. at 760 (emphasis added) (citing <u>Richmond v. Indalex Inc.</u>, 308 F. Supp. 2d 648, 663 (M.D.N.C. 2004)). Such emphasized insufficient allegations are similar to what plaintiff relies upon here.

Plaintiff asserts in the amended complaint that because the franchise agreement allows defendant to make "scheduled inspections during the year," then it follows that defendant "failed to either correct any issues with [EconoLodge] or that [d]efendant simply believed that the training requirements and guidelines it established and put in place were sufficient to protect the Plaintiff from harm, and this affirmative act and decision on the part of the Defendant lead [sic] directly to the harm caused herein." (Am. Compl. ¶ 13). This assertion is insufficient to state a claim for

8

Good Samaritan liability for two reasons. First, while the court must accept all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd., 591 F.3d at 255. Plaintiff's assertion that defendant "believed" the guidelines it established were sufficient to protect plaintiff from harm, (Am. Compl. ¶ 13), is an unwarranted inference devoid of factual enhancement. Likewise, plaintiff's assertion that defendant's failure to correct "any issues," or defendant's beliefs about its requirements and guidelines, constitute an "affirmative act," (id.), is an assertion not based in any facts in the complaint and a mere recitation of the elements of a "Good Samaritan" cause of action.

Second, defendant's asserted failure to correct "any issues with" EconoLodge, and defendant's asserted "belie[f] that training requirements and guidelines it established and put in place were sufficient to protect the Plaintiff from harm," (Am. Compl. ¶ 13), are not sufficient to meet the test for taking "affirmative steps to ensure the safety of [EconoLodge's] employees." Edwards, 200 N.C. App. at 758. Indeed, plaintiff asserts that defendant "[f]ailed to properly provide adequate training to employees" and "[f]ailed to properly train or have training policies that sufficiently protect the safety of employees, particularly female employees who are required to enter occupied or unoccupied guest rooms." (Am. Compl. ¶ 37 (emphasis added); see Am. Compl. ¶¶ 16-17). A failure to provide adequate safety training is not an "affirmative step[]" to ensure the safety of EconoLodge's employees, and it does not permit an inference that defendant undertook "primary responsibility" for safety of EconoLodge's employees. Edwards, 200 N.C. App. at 758 & 761.

In sum, plaintiff fails as a matter of law to state a claim based upon a "Good Samaritan" theory of negligence. Thus, in conjunction with dismissal again of plaintiff's negligence claim

based upon an agency theory, all of plaintiff's negligence claims must be dismissed. Plaintiff's third "claim" for "punitive damages," (Am. Compl. pp. 9-10), which is derivative of her negligence claims, also must be dismissed. Where plaintiff already has been given an opportunity to amend her complaint, with benefit of the court's prior order, dismissal of all claims in this instance is with prejudice.[1]

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss (DE 32). Plaintiff's claims are DISMISSED WITH PREJUDICE, pursuant to Federal Rule of Civil Procedure 12(b)(6). The clerk is DIRECTED to close this case.

SO ORDERED, this the 6th day of December, 2019.

                                                    LOUISE W. FLANAGAN
                                                    United States District Judge

---

[1] Because the court grants defendant's motion to dismiss on the basis of failure to state a claim, the court does not reach defendant's alternative argument that the amended complaint should be dismissed as untimely filed.